# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOSHUA JAMES STOLTE,

        Plaintiff,

v.                                                    Case No. 8:24-cv-551-JRK

LELAND C. DUDEK,
Acting Commissioner of Social
Security, [1]

        Defendant.

_____

## **OPINION AND ORDER**[2]

## **I.  Status**

Joshua James Stolte ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[3]

_____

[1]    Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

[3]    Plaintiff resided in the Western District of New York throughout most or all of the administrative proceedings. Evidently, prior to filing the instant case, he moved to Hillsborough county and currently resides there. See Compl. (Doc. No. 1), filed March 1, 2024, at 1. This appeal is properly filed this Court (particularly the Tampa Division). See 42 U.S.C. § 405(g) (providing that an appeal is to be filed "in the district court of the United States for the judicial district in which the plaintiff resides").

Plaintiff's alleged inability to work is the result of a stroke, bells palsy, and depression. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed April 30, 2024, at 117, 125, 135, 145, 386.[4]

On March 18, 2015, Plaintiff protectively filed the DIB and SSI applications, alleging a disability onset date of March 5, 2013.[5] Tr. at 350-51 (DIB), 352-60 (SSI). The applications were denied initially, Tr. at 117-24, 133, 185-87 (DIB), 125-32, 134, 188-90 (SSI), and upon reconsideration, Tr. at 135-44, 155, 193-95 (DIB), 145-54, 156, 196-98 (SSI).

On October 7, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 45-73. The ALJ issued a decision on November 23, 2016 finding Plaintiff had been disabled from March 5, 2013 through May 8, 2016, but that Plaintiff's disability had ended on May 9, 2016. Tr. at 161-69. Because Plaintiff had conceded he was able to return to work on May 9, 2016, in essence, the ALJ's decision was fully favorable in finding Plaintiff disabled for the "closed period" Plaintiff had alleged. See Tr. at 161-69, 373, 375. The Appeals Council sua sponte assumed jurisdiction and reviewed

---

[4]    Some of the cited documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5]    The DIB and SSI applications were actually filed on March 20, 2015, Tr. at 350 (DIB), 352 (SSI), but the protective filing date is listed elsewhere in the administrative transcript as March 18, 2015, Tr. at 117, 135 (DIB), 125, 145 (SSI).

the decision, ultimately remanding the matter on March 3, 2017 for additional proceedings.[6] Tr. at 172-75, 254-58.

On October 19, 2017, another ALJ held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, a VE, and a medical expert ("ME"). See Tr. at 74-116. The ALJ issued a decision on February 27, 2018 finding Plaintiff not disabled through the date of the decision. Tr. at 27-39. Plaintiff sought review of the decision by the Appeals Council and submitted additional medical evidence in support of the request. Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 11-23 (medical evidence and fax cover sheet), 346 (request for review). On October 22, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the final decision to the United States District Court for the Western District of New York on December 19, 2018. Tr. at 741-72. On November 18, 2019, pursuant to a stipulation by the parties, the Court entered an Order reversing and remanding the case for further administrative proceedings. Tr. at 779-80; see Tr. at 781 (Judgment entered November 19, 2019). On remand to the Administration, the Appeals Council on January 11,

---

[6]     Evidently, Plaintiff's counsel had submitted a brief to the Appeals Council that was not considered. Tr. at 444. When he learned of the error, he resubmitted the brief and asked for the Appeals Council to set aside its order. Tr. at 444, 447-50. It does not appear the Appeals Council acted on the request.

2020 entered an Order vacating the final decision and remanding the matter to an ALJ. Tr. at 787-88.

On June 16, 2020, the ALJ held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a VE.[7] Tr. at 687-712. By this time, Plaintiff sought benefits for the original period of March 5, 2013 through May 8, 2016, but also for a new period from January 1, 2018 forward. Tr. at 657, 983. On December 24, 2020, the ALJ issued a decision finding Plaintiff was not disabled from March 5, 2013 through the date of the decision. Tr. at 657-69. Plaintiff appealed the final decision to the United States District Court for the Western District of New York on March 8, 2021. Tr. at 1559-60. On August 12, 2021, pursuant to a stipulation by the parties, the Court entered an order reversing and remanding the Commissioner's final decision with instructions to conduct further proceedings, offer Plaintiff an opportunity for a hearing, and issue a new decision.[8] Tr. at 1594-96, 1597-99; see Tr. at 1609 (Judgment).

On March 2, 2022, the Appeals Council entered an Order remanding the matter to another ALJ. Tr. at 1602-03. An ALJ held a hearing on May 25, 2023, during which Plaintiff, who was represented by counsel, and a VE testified.[9] Tr.

---

[7]       The hearing was held via telephone, with Plaintiff's consent. Tr. at 689, 840, 846.

[8]       The copies of the Court's order appearing in the administrative transcript do not appear to be signed by the Judge. Tr. at 1594-96, 1597-99.

[9]       This hearing was held via telephone, with Plaintiff's consent. Tr. at 1487, 1656, 1678.

at 1484-1535. On November 2, 2023, the ALJ issued a decision finding Plaintiff was not disabled from March 5, 2013 through the date of the Decision (also finding that Plaintiff had engaged in substantial gainful activity from June 2016 through December 2017). Tr. at 1434-45. The Appeals Council declined to assume jurisdiction, making the ALJ's Decision the final decision of the Commissioner. On March 1, 2024, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in 1) "improperly fail[ing] to give controlling weight" to the opinion of Muhammed Dawood, M.D.; and 2) "fail[ing] to reconcile multiple inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ('DOT')." Plaintiff's Social Security Brief (Doc. No. 13; "Pl.'s Br."), filed May 31, 2024, at 14, 21 (emphasis and italics omitted). On June 25, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem."), responding to Plaintiff's arguments. Then, on July 9, 2024, Plaintiff's Reply Brief (Doc. No. 15; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[10] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 1436-45. At step one, the ALJ determined Plaintiff "engaged in substantial gainful activity during the following periods: June 2016 to December 2017." Tr. at 1436 (emphasis and citation omitted). The ALJ then determined there had "been continuous 12-month periods during which [Plaintiff] did not engage in

---

[10]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

substantial gainful activity," so the ALJ went on to make additional sequential evaluation process findings applicable to "the periods [Plaintiff] did not engage in substantial gainful activity." Tr. at 1437.

At step two, the ALJ found that Plaintiff "has had the following severe impairments since the alleged onset date: history of aneurysm; neurocognitive disorder post-stroke; Bell's Palsy; dysthymic disorder; and anxiety disorder since the alleged onset date. Thereafter, in 2018, [Plaintiff] developed a left shoulder impingement." Tr. at 1437 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1437 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except he cannot climb a rope, ladder or scaffold; and cannot work overhead. He can occasionally stoop to the floor. He can occasionally tolerate exposure to hazards, such as unprotected heights or open waters. He can perform simple, rote, repetitive unskilled tasks, adjust to occasional changes in a work setting, and make occasional simple work-related decisions. He can occasionally interact with the public, and frequently interact with co-workers and supervisors. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly

> quotas. He is able to focus on simple tasks for two hour
> periods.
>
> Beginning in January 2018, the additional impairment
> of left shoulder impingement caused [Plaintiff] to be
> further limited to light work and frequent reaching and
> handling with his left (dominant) arm.

Tr. at 1439 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Call Center Customer Service Supervisor" and a "composite job of Window Cleaner . . . and Contractor." Tr. at 1443 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("37 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 1444 (some emphasis omitted), such as "Marker," "Housekeeping," "Mail Room," and "Small Product Assembler," Tr. at 1444-45. The ALJ concluded Plaintiff "has not been under a disability . . . from March 5, 2013, through the date of th[e D]ecision." Tr. at 1445 (emphasis and citation omitted).

## III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported

by 'substantial evidence.'" <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff raises two issues. They are addressed in turn.

## A. Treating Physician Opinion

Plaintiff argues the ALJ erred in evaluating the opinion of treating physician Dr. Dawood regarding his mental functioning. Pl.'s Mem. at 14-20. According to Plaintiff, the ALJ did not provide the requisite good cause for assigning the opinion little weight. Id. Responding, Defendant argues the ALJ adequately addressed the opinion and the ALJ's findings are supported by substantial evidence. Def.'s Mem. at 5-12.

"Medical opinions[11] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists,

---

11      On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff protectively filed his claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed, as well as Eleventh Circuit authority interpreting those Rules and Regulations. The parties agree this is the appropriate law to apply.

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[12]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R.

---

[12]      For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

§ 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted).

With regard to a treating physician,[13] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly

---

[13]    A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1527(a)(2).

articulate reasons showing "good cause" for discounting it. <u>Simon</u>, 7 F.4th at 1104 (citation omitted); <u>Walker</u>, 987 F.3d at 1338 (citation omitted); <u>Schink</u>, 935 F.3d at 1259; <u>Hargress v. Soc. Sec. Admin., Comm'r</u>, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. <u>Walker</u>, 987 F.3d at 1338; <u>Schink</u>, 935 F.3d at 1259; <u>Hargress</u>, 883 F.3d at 1305; <u>Phillips</u>, 357 F.3d at 1240-41; <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); <u>see also</u> 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz</u>, 825 F.2d at

279); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; <u>see also</u> <u>Pupo v. Comm'r, Soc. Sec. Admin.</u>, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing <u>Schink v. Comm'r of Soc. Sec.</u>, 935 F.3d 1245, 1268 (11th Cir. 2019)); <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ wrote as follows regarding Dr. Dawood's opinion:

> In March 2023, Muhammed Dawood, M.D., completed a mental residual functional capacity questionnaire. Dr. Dawood reported that [Plaintiff] had word finding difficulties but presented with appropriate dress, and had good insight and judgment. [Plaintiff] had difficulties with mood, anxiety, and memory. Dr. Dawood opined that [Plaintiff] was unable to meet

competitive standards regarding the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; understand and remember detailed instructions; carry out detailed instructions; and set realistic goals or make plans independently of others. The doctor stated that [Plaintiff] was seriously limited in the ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain attention for two-hour segments, sustain an ordinary routine without special supervision, travel in unfamiliar places, and use public transportation. Nevertheless, Dr. Dawood also stated that [Plaintiff] was unlimited in the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes and to adhere to basic standards of neatness and cleanliness. Furthermore, the doctor indicated that [Plaintiff] was limited but satisfactory in the ability to maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; be aware of normal hazards and take appropriate precautions; deal with stress of semiskilled and skilled work; interact appropriately with the general public; and maintain socially appropriate behavior. Dr. Dawood noted that [Plaintiff] had difficulty with planning and organization, a slow rate of speech and word finding difficulties, and difficulty remembering and following instructions because of memory/executive functioning problems. The doctor stated that anxiety and low moods increased [Plaintiff's] perception of pain. Dr. Dawood indicated that [Plaintiff] would likely be absent from work more than four days per month because of his impairments.

Tr. at 1441-42 (citations omitted); see Tr. at 2271-75 (Dr. Dawood's March 24, 2023 opinion, jointly signed by Courtney McKinney, M.S., applicable "since March 5, 2013," Tr. at 2275). The ALJ then analyzed Dr. Dawood's opinion as follows:

> I accord little weight to several aspects of the doctor's opinion. First, the record does not support that [Plaintiff] could not complete a normal workday and workweek. The evidence shows that [Plaintiff] maintained employment for significant periods after the alleged onset date. There are not reports of excessive missed appointments due to symptoms. Furthermore, that portion of Dr. Dawood's opinion does not comport with the doctor's opinion that [Plaintiff] could maintain regular attendance and be punctual within customary, usually strict tolerances or that [Plaintiff] could deal with normal work stress and work with coworkers, supervisors, and the public. The doctor's opinion regarding [Plaintiff's] ability to travel does not comport with his ability to drive and use public transportation. Finally, the suggestion that [Plaintiff] was seriously limited in his ability to remember and carry out simple instructions is inconsistent with the evidence discussed above. The assessment of such significant limitation is not supported here.

Tr. at 1442.

The ALJ provided sufficient reasons, supported by substantial evidence, for assigning "little weight" to Dr. Dawood's opinion. First, the ALJ correctly observed that Plaintiff was able to successfully work during some of the period after his alleged onset date. Tr. at 1442. Plaintiff concedes engaging in substantial gainful activity from June 2016 through December 2017 but

contends the ALJ nevertheless failed to take into account the circumstances of such work and Plaintiff's ultimate firing. Pl.'s Mem. at 17 (citing Tr. at 703, 883, 1511). Moreover, Plaintiff argues the import of such work is unclear given that Plaintiff did not establish mental health treatment until April 2018, and Dr. Dawood did not start treating him until January 2019. Id. at 18. Given that Dr. Dawood specifically opined the stated limitations were applicable from March 5, 2013 through the date of the opinion, Tr. at 2275, the ALJ's observation about Plaintiff's ability to work some of that time, together with the ALJ's other findings, was reasonable and indicative that the opinion was not bolstered by the evidence. See, e.g., Walker, 987 F.3d at 1338; 20 C.F.R. § 404.1529(c)(3) (allowing consideration of "information about your prior work record").

Second, the ALJ found that Dr. Dawood's opinion that Plaintiff cannot complete a normal workday and workweek did "not comport with the doctor's opinion that [Plaintiff] could maintain regular attendance and be punctual within customary, usually strict tolerances or that [Plaintiff] could deal with normal work stress and work with coworkers, supervisors, and the public."[14]

---

[14] The ALJ also made the observation that Plaintiff did not miss many medical appointments to justify, in part, discounting Dr. Dawood's opinion. Tr. at 1442. The undersigned agrees with Plaintiff that this is not a matter that should have been considered in discounting Dr. Dawood's opinion, especially in light of many appointments having been telephonic or virtual. See, e.g., Cabrera v. Comm'r of Soc. Sec., No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. 2023) (finding "[t]he ALJ improperly used [the claimant's] ability to attend appointments as indicative of her ability to regularly work"). But, excising this finding entirely, the balance of the ALJ's findings provide the requisite good cause and are supported by substantial evidence.

Tr. at 1442. This observation noted what the ALJ believed to be an internal inconsistency in the opinion, a matter that is permissible to consider. See, e.g., Walker, 987 F.3d at 1338.

Third, the ALJ observed Plaintiff's ability to drive and use public transportation is inconsistent with Dr. Dawood's opinion that Plaintiff is seriously limited in traveling in unfamiliar places and using public transportation. Tr. at 1442. Although Plaintiff testified in the most recent hearing he was currently not driving because a doctor had told him not to, Tr. at 1494, he earlier reported being able to drive and ride in a car and use public transportation, Tr. at 404, 606.

Fourth, the ALJ found Dr. Dawood's "suggestion that [Plaintiff] was seriously limited in his ability to remember and carry out simple instructions is inconsistent with the evidence discussed above." Tr. at 1442. Prior to this finding, the ALJ engaged in a discussion of the four broad mental functional areas and the evidence pertaining as to each, Tr. at 1438-39, as well as the evidence of mental health treatment and a consultative examination findings, Tr. at 1440-41. Although Plaintiff points to some evidence that tends to support his contentions regarding memory issues, Pl.'s Mem. at 19-20, he does not challenge any of the ALJ's other detailed findings in the Decision regarding his memory and mental functioning.

On balance, the ALJ's findings are supported by substantial evidence and need not be disturbed.

**B. Step Five Findings**

Plaintiff argues the ALJ erred at step five by failing to resolve two apparent conflicts between the VE's testimony and the DOT. Pl.'s Br. at 21-24. First, Plaintiff contends the hypothetical to the VE limited Plaintiff to "no overhead work," but the jobs identified by the VE require "frequent reaching." Id. at 21. Even though Plaintiff concedes the ALJ asked the VE about the possibility of a conflict, Plaintiff argues the VE's testimony did not amount to a reasonable explanation for such conflict. Id. at 23-24. Second, Plaintiff argues the hypothetical's limitation to "simple work" was inconsistent with the VE's testimony that Plaintiff can perform the mail clerk job because that job requires a reasoning level of 3. Id. at 21. Responding, Defendant argues there was a reasonable explanation elicited as to the first alleged conflict, and Plaintiff has not shown reversible error as to the second because even excising that representative mail clerk job leaves hundreds of thousands of other jobs Plaintiff can still perform. Def.'s Mem. at 12-19.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239. To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson

v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1229).

If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018); see also SSR 00-4P, 2000 WL 1898704, at *2; Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1318 (11th Cir. 2021). The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).

Here, the ALJ asked the VE about the jobs that can be performed by an individual with Plaintiff's age, education, and ultimate RFC. See Tr. at 1527-30. Importantly, the ALJ stated in the hypothetical at issue that the person

would be able to "frequently reach and handle with his left dominant arm." Tr. at 1528; see Tr. at 1529 (reiterating that limitation with the hypothetical at issue). The VE testified that Plaintiff can perform the jobs of "marker," with "131,000 jobs in the national economy"; "Housekeeping cleaner," with "193,000 jobs in the national economy"; "mail clerk" with "around 12,000 jobs in the national economy"; and, in response to an even more restrictive hypothetical, the VE testified the housekeeper job could be replaced with "small product assembler" with "around 3,000 jobs in the national economy." Tr. at 1528-30. The ALJ then asked the VE about "the distinction between working overhead and reaching in other directions" because "these things are not addressed in the DOT." Tr. at 1534. As grounds for the VE's opinion on that matter, the VE relied on "professional expertise." Tr. at 1534.

In the written Decision, the ALJ adopted the ALJ's testimony, finding that Plaintiff can perform the representative jobs and at the articulated numbers, save for the small product assembler job that the ALJ stated has 20,000 positions in the national economy instead of the VE's 3,000. Tr. at 1444-45. The ALJ also noted that aspects of the RFC "that are not addressed in the DOT" were based on the VE's "professional experience and expertise." Tr. at 1445 (citation omitted).

Plaintiff has not identified an apparent conflict between the VE's testimony and the DOT. According to Plaintiff, the jobs at issue "all required

- 21 -

frequent reaching per the DOT, but the hypotheticals limited Plaintiff to no overhead work." Pl.'s Br. at 21. Not so. The actual hypotheticals presented to the VE and the RFC adopted in the written Decision used similar terminology with regard to the problematic arm: frequent reaching and handling with the left dominant arm. <u>See</u> Tr. at 1439, 1528, 1529. There is no apparent conflict. Even if there were, the ALJ elicited a reasonable explanation for it.

As to the mail job that is a reasoning level 3, it does conflict with the DOT, as Defendant recognizes. <u>See</u> Def.'s Mem. at 15 (citations omitted). But, the other jobs remain available and provide substantial evidence upon which to uphold the step five findings. In <u>Viverette</u>, when an ALJ "apparently treated . . . cumulatively" three different jobs "for purposes of the 'significant numbers' determination," the Eleventh Circuit was "hesitant to make any factual determinations about whether [two untainted jobs] exist in significant numbers in the national economy" after one job was removed for error in the VE's testimony. <u>Viverette</u>, 13 F.4th at 1318. There, the ALJ "based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs." <u>Id.</u> Moreover, the VE on cross examination in <u>Viverette</u> potentially included in the jobs numbers certain positions that were precluded by that claimant's abilities. <u>Id.</u> at 1319. Accordingly, the Eleventh Circuit reversed and remanded for additional consideration at step five. <u>Id.</u>

Here, however, the ALJ made specific numbers findings for each representative job. Tr. at 1444. Although the ALJ did not explicitly find each job singularly constituted employment in significant numbers in the national economy, the ALJ's use of the phrase "representative occupations such as" prior to the findings, combined with the specific parsing of each job and its numbers available in the national economy, shows the ALJ relied on the jobs either singularly or in combination. Tr. at 1444; compare Viverette, 13 F.4th at 1318-19. The unaffected marker and housekeeping jobs, at 131,000 and 193,000 positions respectively, provide substantial evidence for the step five findings.[15] See, e.g., Atha v. Comm'r, Soc. Sec., 616 F. App'x 931, 935 (11th Cir. 2015) (finding supported by substantial evidence at step five 23,800 jobs nationally available). The ALJ did not reversibly err at step five.

## V.  Conclusion

After due consideration, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

---

[15]    Even though Plaintiff does not challenge the ALJ's numbers finding regarding the small products assembler job, given the discrepancy between the finding and the VE's testimony, the Court does not rely upon it.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2025.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record